UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| DARNELL JENKINS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No.: |
| | ) |
| SH SENIOR HOLDINGS, LLC, | ) |
| SRI MANAGEMENT, LLC, | ) |
| d/b/a HERON CLUB AT PRESTANCIA, | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |

**Complaint and Demand for Jury Trial**

Plaintiff, Darnell Jenkins ("Jenkins") sues Defendant, SH SENIOR HOLDINGS, LLC, SRI MANAGEMENT, LLC, d/b/a HERON CLUB AT PRESTANCIA (collectively "Heron Club"), and alleges:

**Jurisdiction**

1. This civil action raises a federal question arising under the laws of the United States, namely: Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1981a under the basis of race, color, religion, sexual orientation, and retaliation.

2. This Court has original jurisdiction of this civil action under 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for the Plaintiff's following state law claims under: the Florida Civil Rights Act of 1992 ("FCRA"), Chapter 760, Florida Statutes because the claims are so related to the federal claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy under

1

Article III of the United States Constitution.

## Venue

4. Plaintiff was a resident of Manatee County, Florida at the time of his termination and now resides in Manatee County, Florida.

5. Plaintiff was employed by Defendant to perform his employment in Sarasota County, Florida.

6. Defendant does business in Sarasota County, Florida.

7. Defendant has agents and managers conducting business in Sarasota County, Florida, for the benefit of Defendant.

8. Defendant is presently and was at the time this action was commenced subject to personal jurisdiction in Sarasota County, Florida.

9. A substantial part, if not all, of the events or omissions giving rise to these claim and causes of action occurred in Sarasota County, Florida.

10. Venue lies in this Court and this District pursuant to 28 U.S.C. § 1391.

## Division

11. Sarasota County, Florida is in the Tampa Division of the United States District Court for the Middle District of Florida.

12. The Tampa Division of the United States District Court for the Middle District of Florida has the greatest nexus with this cause of action as the claim in this civil action arose in Sarasota County, Florida, the Plaintiff was employed by Defendant in Sarasota County, Florida and the Defendant, as a Professional Association under Florida Statutes is deemed to reside in Sarasota County, Florida.

13. This Tampa Division of the United States District Court for the Middle District is the proper division for this civil action pursuant to Rule 1.02(c) of the Rules for the United States District for the Middle District of Florida.

**General Factual Allegations**

14. Plaintiff is an African American black male with dark brown skin whose religion is Christian-Penecostal who participates in nonconforming traditional gender sexual orientation.

15. At all times material herein, Defendant was engaged in an industry affecting commerce and, material to the Title VII and FCRA, had more than 15 employees for each working day in each of 20 or more calendar weeks in 2018 and 2019.

16. Plaintiff is protected under Title VII and FCRA as he is in a protected class for his race, color, religion, sexual orientation and retaliation for opposing the discrimination.

17. Plaintiff was subjected to an adverse employment action(s) as more particularly set forth below.

18. Defendant treated similarly situated employees outside Plaintiff's protected classification more favorably as more particularly set forth below.

19. Plaintiff was qualified to do his job and his work was satisfactory.

20. Plaintiff was hired by Heron Club in March of 2018.

21. In April or May of 2019, the new management took over for Heron Club.

22. In June of 2019, Plaintiff was advised that Heron Club wants him gone; wanted to replace him; that he was being targeted; and that the Regional Manager, Robert Jennings ("Jennings"), was a racist, doesn't like anyone of color and is homophobic.

23. Plaintiff's first interaction with Jennings was uncomfortable, he did not speak or introduce himself to Plaintiff and gave him a disgusting look.

24. On or about August 16, 2019, Plaintiff complained to Pamela[1], Memory Care Director, about the hostile work environment, discriminatory acts being taken against him and how blacks were being treated differently.

25. For example, but not by way of limitation, Jennings would speak to whites but not to blacks, referred to blacks as "idiots" and stated that he "wanted a lot more whites in the building."

26. On September 11, 2019, the Director of Nurses, Tammy Faye ("Faye") promoted Plaintiff to the position of Memory Care Supervisor.

27. Although, Plaintiff was given a promotion and supervisory title; Heron Club would not give him supervisory authority, including, but not limited to, he could not write employees up and/or make normal supervisory decisions, was not given a work email, computer, or phone.

28. Plaintiff was the only black supervisor; however, he was not allowed to attend meetings and was treated unfairly compared to his white counterparts.

29. Heron Club created a hostile racial working environment, for example, but not by way of limitation, the majority, if not all, of the upper management positions were held by whites and the majority of the grunt work was given to the blacks.

30. The Execute Director, Mary Beth ("Mary Beth"), was known to state that "all blacks do is shoot guns and hang out in gangs," and was known to give the blacks grunt work and many employees have left because of the discriminatory hostile work environment.

31. Various employees were harassing, slandering, and talking bad about Plaintiff, including, but not limited to, his sexual orientation and so Plaintiff reported this to Faye and subsequently to Jennings; however, nothing was ever done.

---

[1] Based upon information and belief, Pamela complained of sexual discrimination/harassment.

32. In fact, staff members talked to a new hire about Plaintiff's sexual orientation and Heron Club made the staff apologize to the new hire; however, not to Plaintiff and none of the members were disciplined.[2]

33. Plaintiff reported resident abuse and nothing was ever done, nor an investigation opened and no one was written up when he made complaints.

34. Employees would make false allegations against Plaintiff; however, Heron Club refused to take appropriate action, and the employees never received discipline.

35. Mary Beth was aware of Plaintiff's religious practice and requested accommodations to have Sunday off during his worship hour.

36. However, on or about November 24, 2019, while Faye was on vacation, Mary Beth asked Plaintiff to fill in for a shift on a Sunday. Heron Club was having ongoing issues of being short staffed. Faye had scheduled an outside agency to help, but Mary Beth cancelled the agency for Sunday and told Natasha Clemson to call Plaintiff and let him know that no one showed up for work and he needs to come in. Plaintiff advised her to have Mary Beth call him and that he was on his way to church, had his morning obligations at his worship service and could not come in.

37. It was well known by everyone that Plaintiff had been accommodated in past and was permitted to take Sundays off during his worship services.

38. Shortly thereafter, on or about November 27, 2019, Mary Beth was unprofessionally rude with Plaintiff, yelled at him, rolled her eyes and used threatening body language all in retaliation for Plaintiff refusing to come in on Sunday which led to a text message from Plaintiff to Mary Beth addressing her rude behavior and she apologized stating she was not

---

[2] Heron Club has a Policy Against Workplace Harassment but failed to follow it.

5

feeling well and was frustrated with another employee.

39. Mary Beth's rude behavior towards Plaintiff was a direct result of him not coming in on Sunday due to him attending his worship service.

40. Plaintiff suffered from disparate treatment as Heron Club had a discriminatory motive based upon Plaintiff's following his religious beliefs and attending his church services on Sunday and he was subsequently terminated as a result due to his failure to cover another employee's shift on Sunday.

41. Alternatively, Defendant failed to accommodate Plaintiff as Plaintiff's religious beliefs required him to attend church services on Sunday which conflicted with Defendant's requirements although Defendant was aware of Plaintiff's religious beliefs and Defendant terminated Plaintiff for following his religious beliefs and attending church services on Sunday.

42. Heron Club either discriminated against Plaintiff due to his race, color, religion, sexual orientation and/or retaliated against him for his request for religious accommodations and/or because he was opposing the discriminatory treatment which would ultimately lead to pre-textual investigation and wrongful termination.

43. On or about November 29, 2019, Plaintiff received a call from Mary Beth, telling Plaintiff that she received an allegation that Plaintiff was not feeding a resident, she was going to investigate the allegation and was suspending Plaintiff.

44. The allegation was false and pre-text, Plaintiff had explained that the resident was pocketing food (i.e., not swallowing) and the nursing staff and family were aware of this and

he had authority to feed the resident applesauce, i.e., nothing could have been further from the truth.[3]

45. On or about December 3, 2019, Plaintiff called Cynthia Dotson, VP of Human Resources, who informed Plaintiff she had not heard about this and this should have been reported to her.

46. On or about December 3, 2019, Plaintiff was advised that the Mary Beth did not do an investigation[4] and that this was all about Plaintiff not showing up for work on Sunday.

47. On or about December 3, 2019, Plaintiff went to his doctor for stress, blood pressure, anxiety and was having a nervous breakdown.

48. Other employees have confirmed that they were never questioned by Heron Club about the so-called investigation.

49. Plaintiff offered to resign under certain conditions; however, Heron Club refused to accept his conditions for resignation, so they fired him on December 6, 2019.

50. Other employees (comparators who were either white, not religious and/or practiced traditional conforming sexual orientation or did not oppose the discriminatory practices) were provided warnings and/or put-on 30-day probation, etc…

51. Rather, Heron Club terminated Plaintiff due to his race, color, religion, sexual orientation and/or retaliated against him for opposing the discriminatory treatment and/or requesting the religious accommodations.

52. Plaintiff's immediate supervisor, Faye, who had promoted Plaintiff was on vacation and was never told the actual reason Plaintiff was terminated when she returned.

---

[3] There was either never an investigation and/or there was not a good faith investigation. Had Heron Club spoke with the appropriate witnesses and family, Plaintiff's name would have been cleared.
[4] If there was any type of investigation for resident abuse, it would have had to been reported to the proper authorities.

7

53. Based upon information and belief, Heron Club, made the decision to terminate Plaintiff while Faye was on vacation.

54. Subsequently thereafter, Faye decided to resign due to the hostile and discriminatory work environment.

### Conditions Precedent

55. Plaintiff was intentionally and discriminatorily terminated by Defendant on December 6, 2019.

56. Plaintiff filed his Charge of Discrimination ("Charge") with the EEOC and FCHR on June 9, 2020, a copy being attached as **Exhibit "A."**

57. Plaintiff filed his Charge with the EEOC and the FCHR within 300 days of his wrongful termination.

58. Plaintiff's Charge of Discrimination was timely filed.

59. The EEOC issued its "Right to Sue" letter on or about November 5, 2021, a copy of the "Right to Sue" letter being attached as **Exhibit "B."**

60. This action was filed on February 3, 2022, within 90 days of the receipt of the "Right to Sue" letter.

61. This action was timely filed.

62. All conditions precedent have occurred and/or have been waived.

### Attorney's Fees, Costs and Pre-judgment Interest

63. Plaintiff has employed the undersigned law firm and agreed to pay them a reasonable attorney's fees and the costs of the action

64. Plaintiff is entitled to have his attorney awarded a reasonable attorney's fee and the costs of the action if he prevails pursuant to Title VII, 42 U.S.C. § 2000e-5(k) and 2000e-2; the Civil

Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988; the FCRA, § 760.11, Florida Statues; and section 448.104, Florida Statutes.

65. Plaintiff is entitled to costs and pre-judgment interest if he prevails.

## Count I
## Title VII of the Civil Rights Act for Race, Federal Law

66. This is an action for violation of Title VII, 42 U.S.C. § 2000e- *et seq.* and 42 U.S.C. § 1981a because of discrimination in employment based upon race.

67. Paragraphs 1-65 are re-alleged as if fully set forth herein.

68. Defendant intentionally discriminated against Plaintiff because of his race with regard to the terms and conditions of his employment.

69. Defendant intentionally discriminated against Plaintiff by discharging him because of his race.

70. Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment for damages, compensatory and punitive, including, but not limited to, back pay and lost benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; reinstatement; attorney's fees and costs and pre-judgment interest; an injunction enjoining Defendant from engaging in race discrimination; and, for such other affirmative action and equitable relief as appropriate.

## Count II
## Title VII of the Civil Rights Act for Color, Federal Law

71. This is an action for violation of Title VII, 42 U.S.C. § 2000e- *et seq.* and 42 U.S.C. § 1981a because of discrimination in employment based upon color.

72. Paragraphs 1-65 are re-alleged as if fully set forth herein.

73. Defendant intentionally discriminated against Plaintiff because of his color with regard to the terms and conditions of his employment.

74. Defendant intentionally discriminated against Plaintiff by discharging him because of his color.

75. Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment for damages, compensatory and punitive, including, but not limited to, back pay and lost benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; reinstatement; attorney's fees and costs and pre-judgment interest; an injunction enjoining Defendant from engaging in color discrimination; and, for such other affirmative action and equitable relief as appropriate.

### Count III
### Title VII of the Civil Rights Act for Religion, Federal Law

76. This is an action for violation of Title VII, 42 U.S.C. § 2000e- *et seq.* and 42 U.S.C. § 1981a because of discrimination in employment based upon religion.

77. Paragraphs 1-65 are re-alleged as if fully set forth herein.

78. Defendant intentionally discriminated against Plaintiff because of his religion with regard to the terms and conditions of his employment.

79. Defendant intentionally discriminated against Plaintiff by discharging him because of his religion.

80. Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment for damages, compensatory and punitive, including, but not limited to, back pay and lost benefits, future pecuniary losses, emotional

pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; reinstatement; attorney's fees and costs and pre-judgment interest; an injunction enjoining Defendant from engaging in religious discrimination; and, for such other affirmative action and equitable relief as appropriate.

**Count IV**
**Title VII of the Civil Rights Act for Sexual Orientation, Federal Law**

81. This is an action for violation of Title VII, 42 U.S.C. § 2000e- *et seq.* and 42 U.S.C. § 1981a because of discrimination in employment based upon sexual orientation.

82. Paragraphs 1-65 are re-alleged as if fully set forth herein.

83. Defendant intentionally discriminated against Plaintiff because of his sexual orientation with regard to the terms and conditions of his employment.

84. Defendant intentionally discriminated against Plaintiff by discharging him because of his sexual orientation.

85. Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment for damages, compensatory and punitive, including, but not limited to, back pay and lost benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; reinstatement; attorney's fees and costs and pre-judgment interest; an injunction enjoining Defendant from engaging in sexual orientation discrimination; and, for such other affirmative action and equitable relief as appropriate.

**Count V**
**Title VII of the Civil Rights Act for Retaliation, Federal Law**

86. This is an action for violation of Title VII, 42 U.S.C. § 2000e- *et seq.* and 42 U.S.C. § 1981a based upon retaliation.

87. Paragraphs 1-65 are re-alleged as if fully set forth herein.

88. Defendant intentionally retaliated against Plaintiff for opposing the discrimination against race, color, religion and sexual orientation with regard to the terms and conditions of his employment.

89. Defendant intentionally retaliated against Plaintiff by discharging Plaintiff for opposing the discrimination against race, color, religion and sexual orientation.

90. Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment for damages, compensatory and punitive, including, but not limited to, back pay and lost benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; reinstatement; attorney's fees and costs and pre-judgment interest; an injunction enjoining Defendant from engaging in retaliation; and, for such other affirmative action and equitable relief as appropriate.

## Count VI
## Florida Civil Rights Act for Race, State Law

91. This is an action for violation § 760.10, Florida Statutes, a/k/a FCRA, because of discrimination in employment based upon race.

92. Paragraphs 1-65 are re-alleged as if fully set forth herein.

93. Defendant intentionally discriminated against Plaintiff because of his race with regard to the terms and conditions of his employment.

94. Defendant intentionally discriminated against Plaintiff by discharging him because of his race.

95. Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment for damages, compensatory and punitive, including, but not limited to, back pay and lost benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; reinstatement; attorney's fees and costs and pre-judgment interest; an injunction enjoining Defendant from engaging in race discrimination; and, for such other affirmative action and equitable relief as appropriate.

**Count VII**
**Florida Civil Rights Act for Color, State Law**

96. This is an action for violation § 760.10, Florida Statutes, a/k/a FCRA, because of discrimination in employment based upon color.

97. Paragraphs 1-65 are re-alleged as if fully set forth herein.

98. Defendant intentionally discriminated against Plaintiff because of his color with regard to the terms and conditions of his employment.

99. Defendant intentionally discriminated against Plaintiff by discharging him because of his color.

100. Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment for damages, compensatory and punitive, including, but not limited to, back pay and lost benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; reinstatement; attorney's fees and costs and pre-judgment interest; an injunction enjoining Defendant from engaging in color discrimination; and, for such other affirmative action and equitable relief as appropriate.

## Count VIII
## Florida Civil Rights Act for Religion, State Law

101. This is an action for violation § 760.10, Florida Statutes, a/k/a FCRA, because of discrimination in employment based upon religion.

102. Paragraphs 1-65 are re-alleged as if fully set forth herein.

103. Defendant intentionally discriminated against Plaintiff because of his religion with regard to the terms and conditions of his employment.

104. Defendant intentionally discriminated against Plaintiff by discharging him because of his religion.

105. Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment for damages, compensatory and punitive, including, but not limited to, back pay and lost benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; reinstatement; attorney's fees and costs and pre-judgment interest; an injunction enjoining Defendant from engaging in religious discrimination; and, for such other affirmative action and equitable relief as appropriate.

## Count IX
## Florida Civil Rights Act for Sexual Orientation, State Law

106. This is an action for violation § 760.10, Florida Statutes, a/k/a FCRA, because of discrimination in employment based upon sexual orientation.

107. Paragraphs 1-65 are re-alleged as if fully set forth herein.

108. Defendant intentionally discriminated against Plaintiff because of his sexual orientation with regard to the terms and conditions of his employment.

109. Defendant intentionally discriminated against Plaintiff by discharging him because of his

sexual orientation.

110. Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment for damages, compensatory and punitive, including, but not limited to, back pay and lost benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; reinstatement; attorney's fees and costs and pre-judgment interest; an injunction enjoining Defendant from engaging in sexual orientation discrimination; and, for such other affirmative action and equitable relief as appropriate.

### Count X
### Florida Civil Rights Act for Retaliation, State Law

111. This is an action for violation § 760.10, Florida Statutes, a/k/a FCRA, based upon retaliation.

112. Paragraphs 1-65 are re-alleged as if fully set forth herein.

113. Defendant intentionally retaliated against Plaintiff for opposing the discrimination against race, color, religion and sexual orientation with regard to the terms and conditions of his employment.

114. Defendant intentionally retaliated against Plaintiff by discharging Plaintiff for opposing the discrimination against race, color, religion and sexual orientation.

115. Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

**WHEREFORE**, Plaintiff demands judgment for damages, compensatory and punitive, including, but not limited to, back pay and lost benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; reinstatement; attorney's fees and costs and pre-judgment interest; an injunction enjoining Defendant from engaging in retaliation; and, for

such other affirmative action and equitable relief as appropriate.

## Demand for Jury Trial

Plaintiff demands a trial by jury on all issues so triable.

Dated this 3rd day of February 2022.

.

                         Respectfully submitted,

                          /s/ E. Dusty Aker
                         E. Dusty Aker, Esq.
                         Trial Counsel, Attorney for Plaintiff
                         Fla. Bar No.: 657166
                         AKER Law Firm, P.A.
                         3400 S. Tamiami Trail, Ste. 101
                         Sarasota, Fl 34239
                         Phone: 941-462-2020
                         Facsimile: 941-462-2022
                         Email: dustyaker@akerlawfirm.com